

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415
Tel. (718) 263-9591 Fax. (718) 263-9598

September 22, 2023

**Via ECF**
The Honorable District Judge Gary R. Brown
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      *Re:*    Chacon, *et al.* v. Amity Car Wash, Inc., *et ano.*
              **Case No.: 2:21-cv-6201 (GRB) (ST)**

Dear Judge Brown:

      Our office represents named Plaintiff Humberto Chacon and Opt-in Plaintiffs Jesus Noe Portillo Ramirez, Nieto Sanchez, Carlos Chacon, and Dennis Price-Canas (collectively, "the Plaintiffs") and we submit this motion jointly with counsel for Amity Car Wash, Inc. and Craig Deluca (collectively, "the Defendants"), requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' settlement agreement ("Settlement Agreement"), attached hereto as **Exhibit 1**, were reached following a full-day Court-annexed mediation with all parties present.

      The parties submit this motion jointly in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiffs' counsel's requested attorneys' fees and respectfully request that the Court "So Order" or approve the Settlement Agreement.

    **I.**    <u>**The Monetary Terms of the Settlement Agreement are Fair and Reasonable**</u>

        **a. The Settlement Amount**

      Plaintiffs and Defendants agreed to resolve all claims asserted in this action, including attorneys' fees, which are addressed below, for the global amount of $75,000.00.

        **b. Plaintiffs' Position**

      Plaintiffs brought this case against Defendants alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL").

In general, Plaintiffs alleged that, as former employees of Defendants, that they were not paid proper overtime rates of pay when they worked in excess of forty (40) hours per week in violation of the FLSA and NYLL. As the Complaint was filed in November 2021, the relevant statutory period for Plaintiffs' claims asserted herein encompasses the period spanning November 2015, when they began working for Defendants, through July 2021, when the Plaintiffs concluded their employment with Defendants, which coincides with the time the car wash was sold.

Plaintiffs were employed as car washers for Defendants' business located at 25 Merrick Road, Amityville, NY 11701. Within the relevant statutory period commencing in November 2015, Plaintiffs alleged that they regularly worked between approximately fifty (50) to sixty (60) hours per week, but were paid flat hourly rates that were not properly adjusted for their overtime work performed. Plaintiffs alleged that they were paid hourly rates between $9.00 to $14.00 per hour – depending on the particular Plaintiff and the time period alleged – but that they were paid the same hourly rates for all hours worked. As such, all Plaintiffs alleged that they were owed the "half-time" rate of overtime pay for approximately 10 to 20 hours of overtime worked per week. Additionally, Plaintiffs alleged entitlement to statutory penalties for Defendants' alleged failure to provide NYLL-compliant wage notices and wage statements pursuant to NYLL § 195. Based on the above, Plaintiffs' initial calculation as to their alleged unpaid wages was approximately $93,000.00.  Defendants deny these allegations.

Indeed, in advance of the mediation, Defendants produced substantial time and pay records, which created factual issues as to the number of days and hours worked every week by each Plaintiff and as to the amount of wages each Plaintiff was paid. Although Plaintiffs raised disputes as to the accuracy of these records, particularly as to their number of hours worked, Plaintiffs believed early resolution of this matter was in their best interests as a result of the issues created by Defendants' records. Although Plaintiffs' position was that the records did not reflect all hours worked (including time allegedly improperly deducted for meal breaks and unrecorded work required past normal hours) and did not reflect the actual amounts received, Plaintiffs understood the burden created as a result of these records and the risk that a jury would find that the records accurately reflected the actual number of hours they worked despite their testimony to the contrary. If the records were accepted as true by a factfinder, Plaintiffs may have recovered an amount substantially lower than the agreed-upon settlement, as reflected in spreadsheets provided by the Defendants during the mediation.

Although Plaintiffs were confident that they could prevail on all claims at the time of trial, Plaintiffs' preference was for a guaranteed outcome via Court-approved settlement without the risk of earning an unenforceable judgment years down the road.  This is especially the case where the individual Defendant no longer owns the business Plaintiffs worked for.  Plaintiffs thus considered the defenses and records maintained by Defendants, Defendants' financial abilities, and the risks and expenses of protracted discovery and litigation. Plaintiffs also valued the timing of payment in the near future as opposed to the uncertainty of recovery in the distant future had this matter not settled. All factors weighed in favor of Plaintiffs accepting the agreed-upon settlement amount with the assistance of the Court-certified mediator.

### c. Defendants' Position

The Defendants' car wash was sold in August 2021, and Defendants have no liability from that point once they no longer served as the employer of any Plaintiff. This is the only time that anyone has ever sued Defendants for alleged unpaid wages, which employed many employees over the years.

Defendant Craig Deluca owned and operated the car wash. It was his business and he ran it properly and honestly. He kept an accurate record of every employee's time worked in Excel spreadsheets, which he still has and produced. He paid employees part-check and part-cash, at the employees' request.

Every week's spreadsheet, which was separately maintained, contains three worksheets titled Roster, Hours, and Paystubs. The Roster lists the pay period, each employees name, the number of hours they would be paid in cash, the straight time compensation rate for any additional hours (under O/T PAY), the additional compensation at the half-time rate for any actual overtime hours (under EXTRA), and the total paid in cash (under $$$$). Notably, if there is nothing under EXTRA, that means the employee did not work overtime that week. This can be seen by going to the HOURS[1] worksheet and highlighting the daily hours worked that week for a particular employee. In other words, employees were paid in check and in cash regardless of whether they incurred overtime hours.

Under Paystubs, this worksheet simply outlines how many hours each employee worked, how many hours they were paid for by check, and the total they received in cash separate and apart from those hours paid by check. In other words, the total next to the hours PLUS the "EXTRA/OT" equals the total cash paid. As is evident when reviewing a pay stub *without* EXTRA/OT next to it, that employee did not work any overtime hours for that week, and was merely paid some of the hours he worked in cash instead of by check.

Based on the foregoing, Plaintiffs' factual assertions are implausible, as – given these meticulously kept records – no reasonable jury would believe Plaintiff worked overtime at straight-time compensation. Plaintiffs must factor this risk in their decision-making. In any event, based on the foregoing, Defendants dispute that: (i) Plaintiff worked the number of hours he claims to have worked every single week, and that the records provide the actual number of hours worked; (ii) Plaintiff was paid at the hourly rates set forth in the records; and (iii) Plaintiff worked overtime hours for every single week of his employment.

Further, because Defendants submit that each Plaintiff was properly paid, they are not entitled to any damages for failure to provide either the notice of pay rate nor the weekly wage statements. See NYLL § 198(1-d).

---

[1] Under Hours, the spreadsheet is a little confusing in that you have to add "HRS PD ON CK" and "TOTAL HOURS" to derive the total hours every employee worked that particular week. This can be cross-referenced by selecting the number of hours under the columns marked MON through SUN, and then again for "HRS PD ON CK" and "TOTAL HOURS." They are equal to each other each and every time.

### d. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $75,000.00. The parties believe that this amount is reasonable considering Plaintiffs' claims and the defenses and records maintained by Defendants in this matter. Moreover, the settlement amount was only achieved after a Court-annexed mediation session before a qualified and experienced Court-appointed mediator with all parties present. The parties had genuine, *bona fide* disputes over the dates of Plaintiffs' employment, the hours worked by Plaintiffs, and the pay rates received by Plaintiffs, but negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount.

### II. The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable

The parties in this matter have agreed to a mutual general release of all claims in this action. This was carefully negotiated during the mediation as the parties wish to resolve any and all claims that were or could have been asserted against each other, and because the Plaintiffs no longer work for the Defendants. The parties respectfully submit that the releases provided for in the Agreement are fair and reasonable and part of the parties' compromise to reach a settlement and gives each party "peace of mind" that they will not be subject to any other litigation between each other. Furthermore, it bears emphasis that all of the Plaintiffs are no longer employed by Defendants, the named Defendants no longer operate the business in question, and Plaintiffs have no ongoing relationship with Defendants such that it would affect their rights as employees going forward. Defendants know that all potential claims against them have been resolved by the Agreement. Plaintiffs also get the benefit of knowing that no counterclaims or future claims can be brought against them now or in the future.

Since *Cheeks* was decided, courts in both districts of this Circuit have approved mutual general releases in a number of cases. *See Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) ("there is nothing inherently unfair about a release of claims in an FLSA settlement"); *Cionca v. Interactive Realty, LLC*, 2016 WL 3440554, at *4 (S.D.N.Y. June 10, 2016) ("Under these circumstances, a general release of the kind proposed in this case makes sense, in order to bring closure to both sides, and the Court finds it to be fair and reasonable"); *Geskina v. Admore Air Conditioning Corp.*, 2017 WL 1743842, at *3 (S.D.N.Y.

May 3, 2017) ("A general release of the kind proposed in this case, with [a] former employee[ ] who ha[s] no ongoing relationship with the employer, makes sense in order to bring complete closure") (internal quotations omitted); *Weng v. T&W Rest., Inc.*, 2016 WL 3566849, at *5 (S.D.N.Y. June 22, 2016) (approving agreement containing "mutual general releases, negotiated by competent counsel for both sides, releasing both plaintiffs and defendants from liability for most claims each might have against the other up to the date the Agreement [was] signed"); *Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015) ("A general release of the kind proposed in this case, with former employees who have no ongoing relationship with the employer, makes sense in order to bring complete closure").  Like in the cases cited above, the parties here have agreed to a *mutual* general release.  As such, the Agreement will provide closure to both parties and allow them to "'walk[] away from their relationship … without the potential for any further disputes.'" *Lola*, 2016 WL 922223, at *2 (quoting *Souza*, 2015 WL 7271747, at *5).

Furthermore, the Settlement Agreement does not contain any confidentiality or gag order provision that would otherwise preclude either party from openly discussing their experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are also fair and reasonable and comport with the standards articulated in *Cheeks*.

It should be noted that the parties here have agreed to bifurcate this settlement between the FLSA claims and the NYLL claims.  Courts in this district have found that "[s]eparate settlement agreements, one governing the resolution of FLSA claims and another the resolution of non-FLSA claims, are an acceptable method of resolving cases ...." See Seecharan v. Heritage Place LLC, No. 20-CIV.-3898 (WFK) (LB), 2021 WL 1299692, at *3 (E.D.N.Y. Mar. 15, 2021) (citing Ortiz v. Breadroll, LLC, No. 16-CIV.-7998 (JLC), 2017 WL 2079787, at *2 (S.D.N.Y. May 15, 2017)), report and recommendation adopted, No. 20-CIV.-3898 (WFK) (LB), 2021 WL 1299436 (E.D.N.Y. Apr. 7, 2021).  When presented with bifurcated settlement agreements, courts determine whether the FLSA agreement is fair and reasonable, but the non-FLSA agreement is not subject to approval by the court. Id.; see also Doe v. Solera Cap. LLC, No. 18-CIV.-1769 (ER), 2021 WL 568806, at *2 (S.D.N.Y. Jan. 20, 2021) (approving confidentiality clause in non-FLSA agreement because it is not "a sweepingly broad confidentiality provision which, on its face, applies to all claims asserted in the complaint, including FLSA claims that may not be settled confidentially"); Lee v. Samiti Tech. Inc., No. 21-CIV.-1032 (CBA) (TAM), 2021 WL 7906558, at *3 (E.D.N.Y. Sept. 8, 2021) (approving bifurcated settlement agreement).

As such, the non-monetary terms of the parties' settlement agreement are also fair and reasonable.

### III.     Distribution to Plaintiffs and Requested Attorneys' Fees and Expenses

#### a. Distribution to Plaintiffs

The parties agreed to a global settlement of $75,000.00 to resolve all claims asserted against the Defendants in this action. If the Agreement is approved by the Court, Plaintiffs will recover an aggregate amount of $49,016.00. Each Plaintiff will receive an amount based on his calculation of damages, which accounts for the alleged dates of his employment within the relevant statutory period, the alleged hours that he worked, and the alleged amounts of pay that he received and our analysis of their claims based on Defendants' records. These individual amounts are identified in Paragraph 2 of the Settlement Agreement.

#### b. Requested Attorneys' Fees and Expenses

Plaintiffs' counsel respectfully requests $1,477.00 for identifiable expenses, which include:

- the Eastern District of New York filing fee in this matter: $402.00
- the costs of attempted service and actual service of the Summons and Complaint on all Defendants: $400.00
- the cost of the Court-annexed mediation: $675.00

Plaintiffs' counsel respectfully requests one-third of the settlement less the expenses ($73,523.00), or $24,507.00 in attorneys' fees, as agreed upon in the Plaintiffs' retainer agreements with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $25,984.00.

**Settlement Amount:** $75,000.00
**Attorneys' Expenses:** $1,477.00
**Net Settlement Amount:** $73,523.00 ($75,000.00 - $1,477.00)
**Requested Attorneys' Fees:** $24,507.00 ($73,523.00 / 3)
**Total payable to Attorneys:** $25,984.00 ($24,507.00 + $1,477.00)
**Total payable to Plaintiffs:** $49,016.00 ($75,000.00 - $25,984.00)

Plaintiffs' attorneys and their clients have retainer agreements that are reduced to writing and are signed by the clients. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc.*, 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiffs' counsel throughout the litigation of both matters and the recovery secured through their efforts.

Plaintiffs' counsel has zealously advocated for their clients throughout the litigation process and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiffs.

## IV.  Closing

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of back-and-forth negotiations between experienced counsel with the assistance of the Court-annexed mediation program. As such, we respectfully request that the Court approve the Settlement Agreement. We thank the Court for its consideration and remain available to provide any additional information.

Respectfully submitted,

*James O'Donnell*
James O'Donnell, Esq.