# SETTLEMENT AGREEMENT AND RELEASE

This is a Settlement Agreement and Release ("Agreement") between Amity Car Wash, Inc. d/b/a Amity Car Wash and Detail Center (hereinafter "Amity" or the "Corporate Defendant"), Craig Deluca (hereinafter "Deluca"), and the Corporate Defendant's respective parents, subsidiaries, affiliates, successors, assigns, divisions, past and present officers, owners, shareholders, directors, principals, employees, former employees, representatives, service providers, counsel, and/or agents (whether in their personal or official capacity), and each of their respective successors and assigns, on the one hand (collectively, the "Defendants"), and Humberto Chacon ("Chacon"), Nieto Sanchez ("Sanchez"), Jesus Noe Portillo Ramirez ("Ramirez"), Carlos Enrique Tejada Chacon ("Tejada"), and Dennis Oswaldo Prince-Canas ("Canas") (Chacon, Sanchez, Ramirez, Tejada, and Canas collectively hereinafter the "Plaintiffs"), on the other hand. The Defendants and Plaintiffs may each be referred to as a "Party," or together, be referred to herein as the "Parties." This Agreement is effective as of the date on which it is executed by all Parties (the "Effective Date").

**WHEREAS,** Plaintiffs have commenced and/or opted-in to a collective action against Defendants in the United States District Court for the Eastern District of New York (hereinafter the "Court") styled as Chacon v. Amity Car Wash, Inc., *et ano.*, Case No.: 2:21-cv-6201 (GRB) (ST), alleging wage and hour violations under the Fair Labor Standards Act (hereinafter "FLSA") and the New York Labor Law (hereinafter "NYLL");

**WHEREAS,** Defendants deny that they failed to pay Plaintiffs any monies owed to them, dispute the number of hours Plaintiffs claim they worked, dispute the time period Plaintiffs claims they worked, and deny that Deluca was Plaintiff's employer; and

**WHEREAS,** the Defendants and Plaintiffs desire to fully and finally resolve all differences between them on the terms and conditions hereinafter set forth;

**NOW THEREFORE,** in consideration of the mutual promises of the Parties, the receipt and sufficiency of which the Parties hereby acknowledge, having been represented by counsel and the Parties intending to be bound, do hereby agree as follows:

1. **Non-Admission.** This Agreement is entered into mutually in order to avoid the costs, uncertainty, and vexation of litigation. The terms set out in this Agreement are a compromise settlement of disputed claims, the validity, existence or occurrence of which is expressly disputed by the Parties. This Agreement shall not be admissible evidence in any judicial, administrative, or other legal proceedings for any reason except to enforce the terms of this Agreement.

2. **Consideration.**

a. In consideration for each Plaintiffs' execution, compliance with, and non-revocation of this Agreement, the Defendants agree to pay Plaintiffs the amount of Seventy Thousand Five and 00/100 ($70,000.00) ("Settlement Payment), of which Twenty-Four Thousand Two Hundred Fifty-One Dollars and Seventy-Three Cents ($24,251.73) will be apportioned to attorneys' fees and costs ("Fee Payment") and Forty-Five Thousand Seven Hundred Forty-Eight Dollars and Twenty-Seven Cents ($45,748.27) will be apportioned to Plaintiffs ("Plaintiffs' Payment") as further set forth below.

b. The Settlement Payment shall be made according to the following schedule. Within thirty (30) days of receipt of an Order from the Hon. Gary R. Brown, U.S.D.J. formally approving the contemplated settlement herein, payment in the amount of Seventy Thousand Dollars ($70,000.00) shall be delivered to Plaintiffs' counsel at Helen F. Dalton & Associates, P.C., 80-02 Kew Gardens Road, Suite 601, Kew Gardens, New York 11415 as follows:

(i) One check payable to Plaintiff Humberto Chavez in the amount of Twelve Thousand Six Hundred Dollars and Zero Cents ($12,600.00);

(ii) One check payable to Plaintiff Nieto Sanchez in the amount of Twelve Thousand Six Hundred Dollars and Zero Cents ($12,600.00);

(iii) One check payable to Plaintiff Jesus Noe Portillo Sanchez in the amount of Three Thousand Two Hundred Eighty-One Dollars and Sixty Cents($3,281.60);

(iv) One check payable to Plaintiff Carlos Enrique Tejada Chacon in the amount of Four Thousand Six Hundred Sixty-Six Dollars and Sixty-Seven Cents ($4,666.67);

(v) One check payable to Denis Oswaldo Prince-Canas in the amount of Twelve Thousand Six Hundred Dollars and Zero Cents ($12,600.00); and

(vi) One check payable to Helen F. Dalton & Associates, as attorneys for Plaintiffs, in the amount of Twenty-Four Thousand Two Hundred Fifty-One Dollars and Seventy-Three Cents ($24,251.73).

c. Plaintiffs and their counsel each must submit executed IRS Form W-9s with a Taxpayer Identification Number from each Plaintiff and their counsel in order to receive the Settlement Payment, a copy of which may be submitted electronically together with Plaintiffs' executed counterpart of this Agreement. At the time of execution of this Agreement, Plaintiffs' counsel shall provide Defendants' counsel with completed IRS Forms W-9 for each Plaintiff and Plaintiffs' counsel, and the parties acknowledge and agree that each individual Plaintiff's payment listed in Paragraph 1(a) shall not be made unless and until Plaintiffs' counsel has provided Defendants' counsel with a completed IRS Form W-9 for that individual Plaintiff. However, in the event that one or more Plaintiffs do not provide their completed IRS Form W-9(s) at the time of execution, it shall not delay the payments due the other Plaintiffs and Plaintiffs' counsel in accordance with this Agreement, except that Defendants shall make back-up withholdings in accordance with the law. For any Plaintiff who provides a completed IRS Form W-9 subsequent to the payment date, his payment shall be released to him within seven business (7) days of providing a completed IRS Form W-9.

d. Plaintiffs agree and affirm that the Settlement Payment shall constitute the entire amount of monetary consideration, inclusive of attorneys' fees and costs, provided to him under this Agreement and that Plaintiffs will not seek any further compensation for any other claimed unpaid wages, wage supplements, injuries, damages, costs, or disbursements, in connection with any of the matters encompassed in this Agreement or any aspect of Plaintiffs' relationship with the Defendants.

e. Upon receipt of the Settlement Payment, Plaintiffs each agree, affirm, and acknowledge that they each have been paid all wages and wage supplements and all other amounts owed to them, inclusive of attorneys' fees and costs, for any reason by the Defendants.

f. Plaintiffs and their counsel will each be issued a Form 1099. Plaintiffs further agree that they each shall be responsible for payment of all personal taxes that may be due as a result of the Settlement Payment. Plaintiffs each understand and agree that no representation is made by or on behalf of the Defendants regarding tax obligations or consequences that may arise from this Agreement.

g. Further, Plaintiffs each agree to indemnify and hold harmless the Defendants from and against all liens, liabilities, interest and penalties that may be assessed against or incurred by them as a result of not deducting taxes or other withholdings or satisfying any liens or judgments against any Plaintiff on the Settlement Payment.

3. **Claims Released by Plaintiffs.**

a. In exchange for the Settlement Payment and for other good and valuable consideration, receipt of which is hereby acknowledged, Plaintiffs, and Plaintiffs on behalf of his family members, heirs, executors, representatives, trustees, agents, insurers, administrators, legal representatives, successors and assigns (collectively, the "Releasors"), irrevocably and unconditionally fully and forever waive, release and discharge the Defendants, the Defendants' parents, subsidiaries, affiliates, divisions, and/or related companies, and each of their respective directors, officers, shareholders, partners, employees, managers, members, agents, attorneys, and successors of the Defendants ("Releasees") from any and all claims, demands, actions, causes of actions, obligations, judgments, rights, fees, damages, debts, obligations, liabilities and expenses (inclusive of attorneys' fees and costs) of any kind whatsoever, whether known or unknown, from the beginning of time to the date of Plaintiffs' execution of this Agreement, including, without limitation, any claims under any federal, state, local or foreign law, that Releasors may have, or have ever had against Releasees, including but not limited to those arising out of, or in any way related to Plaintiffs' hire, benefits, employment, termination or separation from employment with the Defendants and any actual or alleged act, omission, transaction, practice, conduct, occurrence or other matter, whether or not Plaintiffs has previously filed such a claim.

b. Plaintiffs further agrees and acknowledges that Releasors are giving up any rights or claims which Releasors may have against Releasees under numerous laws and regulations, including but not limited to, those regulating employment, whether on the federal, state, or local level, including, but not limited to:

(i) any and all claims under Title VII of the Civil Rights Act, as amended, the Americans with Disabilities Act, as amended, the Family and Medical Leave Act, as amended, the Fair Labor Standards Act (to the extent permitted by law), the Equal Pay Act, as amended, the Employee Retirement Income Security Act, as amended (with respect to unvested benefits), the Civil Rights Act of 1991, as amended, Section 1981 of U.S.C. Title 42, the Sarbanes-Oxley Act of 2002, as amended, the Worker Adjustment and Retraining Notification Act, as amended, the National Labor Relations Act, as amended, the Age Discrimination in Employment Act, as amended, the Uniform Services Employment and Reemployment Rights Act, as amended, the Genetic Information Nondiscrimination Act of 2008, the Vietnam Era Veterans' Readjustment Assistance Act of 1974, the Occupational Safety and Health Act, the Immigration Reform and Control Act of 1986, the New York State Human Rights Law, the New York Labor Law (including but not limited to the Retaliatory Action by Employers Law, the New York State Worker Adjustment and Retraining Notification Act, all provisions prohibiting discrimination and retaliation, and all provisions regulating wage and hour law), the New York Civil Rights Law, Section 125 of the New York Workers' Compensation Law, the New York City Human Rights Law, any and all claims pursuant to any other state law and all of their respective implementing regulations and/or any other federal, state, local or foreign law (statutory, regulatory or otherwise) that may be legally waived and released;

(ii) any and all claims for compensation of any type whatsoever, including but not limited to claims for salary, wages, bonuses, commissions, incentive compensation, vacation and/or severance;

(iii) any and all claims arising under tort, contract and/or quasi-contract law, including but not limited to claims of breach of an expressed or implied contract, tortious interference with contract or prospective business advantage, breach of the covenant of good faith and fair dealing, promissory estoppel, detrimental reliance, invasion of privacy, nonphysical injury, personal injury or sickness or any other harm, wrongful or retaliatory discharge, fraud, defamation, slander, libel, false imprisonment, negligent or intentional infliction of emotional distress; and

(iv) any and all claims for monetary or equitable relief (inclusive of attorneys' fees and costs), including but not limited to attorneys' fees, costs, back pay, front pay, reinstatement, and medical fees from the beginning of time to the Effective Date.

c. Specific Release of ADEA and OWBPA Claims. In further consideration of the benefits provided to Plaintiffs in this Agreement, including but not limited to the Settlement Payment, Releasors hereby irrevocably and unconditionally fully and forever waive, release and discharge Releasees from any and all claims, whether known or unknown, from the beginning of time to the Effective Date arising under the Older Workers' Benefit Protection Act (OWBPA) and the Age Discrimination in Employment Act (ADEA), as amended, and its implementing regulations. By signing this Agreement, Plaintiffs hereby acknowledges and confirms that he: (i) has read this Agreement in its entirety and understands all of its terms; (ii) has been advised of and availed himself of his right to consult with an attorney prior to executing this Agreement; (iii) knowingly, freely and voluntarily assents to all of the terms and conditions set out in this Agreement including, without limitation, the waiver, release and covenants contained herein; (iv) is executing this Agreement, including the waiver and release, in exchange for good and valuable consideration in addition to anything of value to which he is otherwise entitled; (v) was given at least twenty-one (21) days to consider the terms of this Agreement and consult with an attorney of his choice, although he may sign it sooner if desired; (vi) understands that he has seven (7) days from the Effective Date to revoke the release in this paragraph by delivering notice of revocation to Emanuel Kataev, Esq. at 3000 Marcus Avenue, Lake Success, NY 11042-1073 by overnight delivery before the end of such seven-day period; (vii) understands that the release contained in this paragraph does not apply to rights and claims that may arise after the Effective Date; and (viii) in entering into this Agreement, agrees and acknowledges that he is not relying on any representation, promise or inducement made by the Defendants or its attorneys with the exception of those promises described in this Agreement.

d. This release and waiver of claims shall not be construed to impair Plaintiffs' right to enforce the terms of this Agreement and does not include any claim which, as a matter of law, cannot be released by private agreement. Nor does this release prohibit or bar Plaintiffs from providing truthful testimony in any legal proceeding or from cooperating with, or making truthful disclosures to, any local, state, or federal governmental agency, or filing a timely charge or complaint with the EEOC, or participating in any investigation or proceeding conducted by the EEOC regarding any claim of employment discrimination. Notwithstanding the foregoing, with respect to any claim that cannot be released by private agreement, Plaintiffs agrees to release and waive and hereby does release and waive his right (if any) to any monetary damages or other recovery as to such claims, including any claims brought on Plaintiffs' behalf, either individually or as part of a collective action, by any governmental agency or other third party.

4. **Release of All Claims by Defendants against Plaintiffs**

In exchange for the Settlement Payment and for other good and valuable consideration, receipt of which is hereby acknowledged, the Defendants irrevocably and unconditionally fully and forever waives, releases, and discharges the Plaintiffs from any and all claims, demands, actions, causes of actions,

obligations, judgments, rights, fees, damages, debts, obligations, liabilities and expenses (inclusive of attorneys' fees) of any kind whatsoever, whether known or unknown, from the beginning of time to the date of the Defendants' execution of this Agreement, including, without limitation, any claims under any federal, state, local, or foreign law, that the Company may have, have ever had, or may have in the future against Plaintiffs, including but not limited to those arising out of, or in any way related to Plaintiffs' hire, benefits, employment, termination, or separation from employment with the Defendants, and any actual or alleged act, omission, transaction, practice, conduct, occurrence or other matter, whether or not the Defendants have previously filed such a claim.

b. The Defendants further agree and acknowledge that they are giving up any rights or claims which they may have against Plaintiffs under numerous laws and regulations, including but not limited to, those regulating employment, whether on the federal, state, or local level, including, but not limited to:

(i) any and all claims under the faithless servant doctrine, any and all claims pursuant to any other state law and all of their respective implementing regulations and/or any other federal, state, local or foreign law (statutory, regulatory or otherwise) that may be legally waived and released;

(ii) any and all claims arising under tort, contract and/or quasi-contract law, including but not limited to claims of breach of an expressed or implied contract, tortious interference with contract or prospective business advantage, breach of the covenant of good faith and fair dealing, promissory estoppel, detrimental reliance, invasion of privacy, nonphysical injury, personal injury or sickness or any other harm, wrongful or retaliatory discharge, fraud, defamation, slander, libel, false imprisonment, negligent or intentional infliction of emotional distress; and

(iii) any and all claims for monetary or equitable relief, including but not limited to attorneys' fees, back pay, front pay, reinstatement, experts' fees, medical fees or expenses, costs and disbursements from the beginning of time to the date of Plaintiffs' execution of this Agreement

5. **<u>Plaintiffs' Representations and Warranties</u>**. Plaintiffs hereby represents, warrants, acknowledges, and affirms as follows:

a. that he has not filed or permitted anyone to file on his behalf, any complaints, charges or claims for relief against the Defendants with any local, state or federal court or administrative agency other than the instant lawsuit;

b. that he has been paid and has received all compensation, wages, overtime payments, wage supplements, bonuses, commissions, leave, paid and unpaid, paid time off and benefits to which he may be due for any reason, except as provided in this Agreement; and

c. that he has no known workplace injuries or occupational diseases and has been provided and/or has not been denied any leave requested under the Family and Medical Leave Act.

6. **Knowledge & Solicitation of Additional Plaintiffs.** As of the date of the full execution of this Agreement, Plaintiffs and their counsel each represent and warrant that they are not presently aware of and have not solicited, nor have been contacted by, any individuals to bring or threaten to bring any action for unpaid wages or otherwise against Defendants or any one of them, nor are they cooperating or assisting

any attorney in any other putative lawsuit against Defendants or any one of them. Except as set forth herein, this Agreement shall not be cited in any matter for any purposes against Defendants, their affiliates, subsidiaries, predecessors, successors, assigns, and any of their respective officers, directors, employees, administrators, benefit plans, welfare plans, deferred compensation plans or long-term incentive plans, or as proof of liability of any sort.

7. **Confidentiality.**

a. Plaintiffs agrees not to disclose any confidential or proprietary information of the Defendants obtained during his employment with the Defendants to any person or entity, for any reason, at any time. Plaintiffs further agrees not to use any confidential or proprietary information of the Defendants for any purpose, whether on his own behalf or on behalf of another.

8. **Mutual Non-Disparagement.** Plaintiffs and the Individual Defendant agree that they each shall not, directly or indirectly, at any time, make any statement (whether written, oral, electronic, or otherwise) or otherwise take any action that would or might reasonably be interpreted as harmful or disparaging to any of the Parties. For purposes of the preceding sentence, "disparaging" shall mean any statement or communication, whether verbal or written, that would tend to lessen the stature or standing of the Parties in the eyes of an ordinary and reasonable person in the community, but will not preclude the Parties from making good faith statements in the context of any judicial, administrative, arbitration, mediation or other legal proceeding.

9. **Response to Inquiries on Employment.** If a prospective employer of Plaintiffs contacts the Defendants seeking an employment reference, the Defendants will only provide Plaintiffs' dates of employment and his position held with the Defendants.

10. **Breach of Agreement.** Breach of any of the provisions of this Agreement by any Party to this Agreement shall be pursued solely in the Supreme Court of the State of New York, Kings County. The Parties agree that the laws of the State of New York shall apply, without regard to its conflict-of-laws principles.

11. **Severability.** The provisions of this Agreement are severable. If any provision of this Agreement is held invalid, the invalidity shall not affect other provisions or application of the Agreement that can be given effect without the invalid provision or application.

12. **Non-Waiver.** No waiver of any breach of any term or provision of this Agreement shall be construed to be, or shall be, a waiver of any other breach of this Agreement. No waiver shall be binding unless in writing and signed by the Party waiving the breach. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, successors, and permitted assigns.

13. **Headings.** The headings in this Agreement are for the convenience of the Parties and are not intended to modify the terms of the Agreement.

14. **Multiple Counterparts.** This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which together shall constitute one and the same instrument. Faxed and e-mailed scanned copies shall be effective and enforceable.

15. **Representation by Counsel and Entire Agreement.** This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any and all prior discussions, agreements or understandings between the Parties. The Parties agree that this Agreement was drafted jointly by the Parties,

and therefore shall be construed according to its fair meaning, and not strictly for or against any of the Parties. Should any provision of the Agreement be declared or determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and the illegal or invalid part, term or provision shall be deemed not to be a part of the Agreement. This Agreement shall survive the cessation or termination of any arrangements contained herein.

16. **Applicable Law.** This Agreement shall be governed by and interpreted in accordance with the laws of the State of New York.

17. **Voluntary Agreement.** By signing in the space provided below, the Parties agree and affirm that:

a. They have been advised to and have carefully read and fully understand all of the provisions of this Agreement;

b. Plaintiffs was given at least twenty-one (21) days to review, consider and execute this Agreement and has consulted with his attorney of choice before executing this Agreement;

c. This Agreement is legally binding, and by signing it, Plaintiffs understands that he is giving up certain rights, including his right to pursue any claims against the Releasees (inclusive of attorneys' fees and costs) from the beginning of time until the date of this Agreement;

d. No promise or representation of any kind or character has been made by the Defendants or by anyone acting on their behalf to induce Plaintiffs to enter into this Agreement, and Plaintiffs has not been forced or pressured in any way to sign this Agreement;

e. Through this Agreement, Plaintiffs is releasing all of the Releasees from any and all claims that he may have (inclusive of attorneys' fees and costs) against the Releasees in exchange for the Settlement Payment described herein;

f. The Parties knowingly and voluntarily agree to all of the terms set forth in this Agreement, and intend to be legally bound by them.

| | |
|---|---|
| **Amity Car Wash, Inc.**<br><br>By: [signature]<br>**Craig Deluca**<br>**Its: President** | DATE: 06 / 12 / 2023 |
| [signature]<br>**Craig Deluca, individually** | DATE: 06 / 12 / 2023 |

HUMBERTO CHACON
**Humberto Chacon**

DATE: 8 / 18 / 23

STATE OF NEW YORK )
) ss.:
COUNTY OF Queens )

On the 18 day of August, 2023 before me personally appeared Humberto Chacon personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and that by his signature on the instrument, the individual executed the instrument and that such individual made such appearance before the undersigned.

Leah Janash
Notary Public, State of New York
No. 01JA5077017
Qualified in Queens County
Commission Expires April 28, 2027

NOTARY PUBLIC

**Nieto Sanchez**

DATE: 8 / 22 / 23

STATE OF NEW YORK )
) ss.:
COUNTY OF Queens )

On the 22 day of August, 2023 before me personally appeared Nieto Sanchez personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and that by his signature on the instrument, the individual executed the instrument and that such individual made such appearance before the undersigned.

Leah Janash
Notary Public, State of New York
No. 01JA5077017
Qualified in Queens County
Commission Expires April 28, 2027

NOTARY PUBLIC

**Jesus Noe Portillo Ramirez** DATE: 8 / 22 / 23

STATE OF NEW YORK )
) ss.:
COUNTY OF Queens )

On the 22 day of August, 2023 before me personally appeared Jesus Noe Portillo Ramirez personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and that by his signature on the instrument, the individual executed the instrument and that such individual made such appearance before the undersigned.

Leah Janash
Notary Public, State of New York
No. 01JA5077017
Qualified in Queens County
Commission Expires April 28, 2027

NOTARY PUBLIC

**Carlos Enrique Tejada Chacon** DATE: 8 / 18 / 23

STATE OF NEW YORK )
) ss.:
COUNTY OF Queens )

On the 18 day of August, 2023 before me personally appeared Carlos Enrique Tejada Chacon personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and that by his signature on the instrument, the individual executed the instrument and that such individual made such appearance before the undersigned.

Leah Janash
Notary Public, State of New York
No. 01JA5077017
Qualified in Queens County
Commission Expires April 28, 2027

NOTARY PUBLIC

[signature]

**Dennis Oswaldo Prince-Canas**

DATE: 8 / 18 / 23

STATE OF NEW YORK )
) ss.:
COUNTY OF Queens )

On the 18 day of August, 2023 before me personally appeared Dennis Oswaldo Prince-Canas personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and that by his signature on the instrument, the individual executed the instrument and that such individual made such appearance before the undersigned.

Leah Janash
Notary Public, State of New York
No. 01JA5077017
Qualified in Queens County
Commission Expires April 28, 2027

[signature]
NOTARY PUBLIC